IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 7, 2006

## DONALD CLARK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-27780     Paula Skahan, Judge**

---

**No. W2006-00642-CCA-R3-PC  - Filed April 25, 2007**

---

The petitioner, Donald Clark, who was convicted of especially aggravated robbery, sought post-conviction relief from the Shelby County Criminal Court, which denied relief after an evidentiary hearing.  On appeal, the petitioner presents several issues of the ineffective assistance of counsel. We affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Juni S. Ganguli, Memphis, Tennessee, for the Appellant, Donald Clark.

Robert E. Cooper, Jr., Attorney General & Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Anita Spinetta, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

A Shelby County jury convicted the petitioner of especially aggravated robbery, *see* T.C.A. § 39-13-403 (2006), and the trial court sentenced him to serve 27 years as a violent offender. The proof at trial showed that on November 27, 1999, the petitioner and Ronald Champion approached Rickey Howell, an admitted drug dealer, to purchase crack cocaine. *See State v. Donald Clark*, No. W2001-01549-CCA-R3-CD, slip op. at 1 (Tenn. Crim. App., Jackson, May 15, 2003). Howell testified that he informed the men that he did not have the amount requested, and the men left. *See id*. Hours later, the petitioner again approached Howell and demanded Howell's money at gun point. *See id*.   Upon receiving the money, the petitioner shot Howell in the ankle, necessitating surgery. *See id*., slip op. at 2.  After Howell's surgery and while still in the hospital, Howell identified the petitioner as the perpetrator from a photographic array. *See id*.

The petitioner gave a statement to law enforcement personnel after his arrest, admitting that he purchased fake crack cocaine from Howell. *See id.* After discovering that the cocaine was fake, the petitioner approached Howell, demanding his money back. When Howell refused, the petitioner pulled the hand gun, intending to scare Howell but accidentally shot Howell in the ankle. *See id.*

On direct appeal, this court affirmed the petitioner's conviction. *See id.*, slip op. at 7. The petitioner then filed a timely petition for post-conviction relief, which the post-conviction court denied after an evidentiary hearing.[1]

In the post-conviction hearing, lead counsel testified that he was appointed to several of the petitioner's robbery cases, including the present case for especially aggravated robbery, and that he worked the case for months before it went to trial in April 2001. He testified that he had co-counsel assist him with the trial because of his limited experience at that time and the serious nature of the offense.

Prior to trial, lead counsel discussed the State's plea offer of 30 years with the petitioner, but the petitioner was unwilling to consider the offer. Lead counsel stated, "But I do recall that [the petitioner] was very unreasonable about the discussion of any possible settlement in the case." He further testified that the petitioner qualified as a violent offender who would have to serve his sentence without the possibility of parole.

Lead counsel did not recall whether the petitioner was arrested without a warrant; however, he testified that probable cause existed because at least three people identified him as the perpetrator of the various robberies in which he represented the petitioner, including this especially aggravated robbery charge. Lead counsel explained that generally he challenges warrantless arrests if a good faith basis exists. He explained that in this situation, a motion to suppress would have been frivolous. He further agreed that when motions to suppress are filed, the movant receives the police reports, yet he received these reports via a discovery motion.

Lead counsel testified that he did not attempt to suppress the petitioner's statement to law enforcement personnel because "[he] thought the only chance [the petitioner] had at trial was to argue that what [the petitioner] said in his statement was what really happened. That this wasn't a robbery." Lead counsel testified that the statement was the only evidence that could rebut Howell's testimony without having to put the petitioner on the stand, avoiding impeachment via his lengthy criminal record.

Lead counsel also testified that Howell identified the petitioner from a photographic array while in the hospital receiving treatment and while on medication. He did not challenge this

---

[1] The petitioner raised numerous issues in his post-conviction petition and amended petition. The post-conviction court ruled on every issue except for six issues. On appeal, the petitioner only raises four of the issues, which the post-conviction court specifically ruled upon, abandoning all others.

identification because Howell knew the petitioner; the two had gone to school together. Lead counsel testified that the two men were not strangers and that the petitioner claimed neither that he did not shoot Howell nor that Howell's identification was incorrect. The petitioner stated that the shooting was accidental. Therefore, lead counsel explained that he had no good faith basis to move to suppress the identification.

Lead counsel testified that he attempted to interview Howell, but Howell was "quite angry and not willing to cooperate." Lead counsel explained that because of his anger and resentment of the injuries he received, Howell was unwilling to help; therefore, counsel only attempted the interview once.

Lead counsel spoke with Ronald Champion, the co-defendant in the various robberies. Lead counsel learned that Champion's involvement with this case was minimal. Champion remained in the vehicle during this particular robbery; therefore, lead counsel did not see how Champion's testimony would be beneficial to the petitioner. Furthermore, lead counsel did not think that Champion's trial counsel would allow him to testify on the petitioner's behalf, and Champion had a lengthy criminal record, allowing for possible impeachment.

Finally, lead counsel agreed that the State asked Officer Jeffrey Clark leading questions at trial; however, in one instance the question elicited information testified to previously and the other coincided with the petitioner's version of the facts.

Co-counsel testified that he was a "silent second chair," meaning that he only assisted in taking notes for jury selection. He did not remember giving lead counsel any advice during trial and stated that had he felt lead counsel was performing ineffectively, he would have taken an active role in the trial.

The petitioner testified that when lead counsel was appointed to his case in 2000 that he told lead counsel he was arrested without a warrant. He asked lead counsel to file a motion to suppress; however, lead counsel instructed him that there was no reason to file such a motion.

The petitioner also testified that lead counsel informed him that his statement should come into evidence. The petitioner told lead counsel that at the time of the statement he had been smoking crack and that he admitted in the statement that the shooting was accidental, that "it was a drug deal that had [gone] bad," and that he was "trying . . . to get [his] money back from [Howell]."

Regarding Howell's identification, the petitioner stated that he had gone to school with Howell but that Howell had made the identification while in the hospital and on medication. He stated that Howell was a confessed drug dealer and that he had a lengthy record and would not be believable at trial. The petitioner also testified that although he took lead counsel's advice and decided not to testify, had he testified, the jury would have heard his side of the story and believed him rather than Howell because Howell's criminal record was longer than his.

The petitioner testified that he wanted lead counsel to investigate Champion, who was charged with the same robberies. He stated that Champion was available, willing to speak with lead counsel, and eager to testify at the petitioner's trial. He stated that if lead counsel had spoken to Champion, then the outcome of his trial would have been different because Champion, as the only witness, would have explained that the petitioner did not rob Howell. The petitioner further testified that he subpoenaed Champion for the post-conviction hearing, but Champion was not to be found.

The post-conviction court denied relief on these claims. The court found that the multiple identifications by robbery victims, including Howell, who had known the petitioner, amounted to probable cause for a warrantless arrest; therefore, lead counsel had no good faith basis to seek suppression. The court also credited lead counsel's testimony that "he made a strategic decision" not to seek suppression of the petitioner's statement so that the petitioner's version of events would be presented to the jury without putting the petitioner on the witness stand, avoiding impeachment by his lengthy criminal history. The post-conviction court further found that identification was established, that it was not a disputed issue in the case, and that the petitioner's defense was accident; thus, he was not entitled to relief on this issue. Next, the post-conviction court found that lead counsel was neither ineffective for failing to interview the victim nor failing to subpoena Champion. He found that lead counsel attempted to interview the victim and that no witnesses were presented at the post-conviction hearing; therefore, the court denied relief. Finally, the court found that the decision not to object to leading questions was a strategic decision worthy of protection and that the petitioner failed to show the failure prejudiced him.

On appeal of the denial of his petition, the petitioner raises the following claims of ineffective assistance of trial counsel:

1. Trial counsel's failure "to challenge the circumstances surrounding [the petitioner's] warrantless arrest";

2. Trial counsel's failure to challenge the admission of the petitioner's statement;

3. Trial counsel's failure to challenge the victim's identification of the petitioner;

4. Trial counsel's failure to interview the victim and subpoena Ronald Champion; and

5. Trial counsel's failure to object to the "prosecution's egregious improper leading [questions] of Officer Jeffrey Clark."

Because the post-conviction court's denial of relief is supported in the record, we affirm that court's judgment.

-4-

The post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

The Sixth Amendment of the United States Constitution and Article I, section 9 of the Tennessee Constitution both require that a defendant in a criminal case receive effective assistance of counsel. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975). "Claims of ineffective assistance of counsel are considered mixed questions of law and fact and are subject to de novo review." *Serrano v. State*, 133 S.W.3d 599, 603 (Tenn. 2004); *see State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When a defendant claims ineffective assistance of counsel, the court must determine (1) whether counsel's performance was within the range of competence demanded of attorneys in criminal cases, *Baxter*, 523 S.W.2d at 936, and (2) whether any deficient performance prejudiced the petitioner, *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068 (1984); *see also Powers v. State*, 942 S.W.2d 551, 557 (Tenn. Crim. App. 1996). Courts need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. *Henley*, 960 S.W.2d at 580.

A reviewing court must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2070. This court should not second-guess informed tactical and strategic decisions by defense counsel. *Henley*, 960 S.W.2d at 579. It must evaluate counsel's performance from counsel's perspective at the time of the alleged error and in light of the totality of the evidence. *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2070.

However, this court's deference to counsel's tactical decisions will depend upon counsel's adequate investigation of defense options. *Burger v. Kemp*, 483 U.S. 776, 794, 107 S. Ct. 3114, 3126 (1987). Assuming adequate investigation, the fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. *Jerry Whiteside Dickerson v. State*, No. 03C01-9710-CR-00472 (Tenn. Crim. App., Knoxville, Sept. 16, 1998); *Thompson v. State*, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997).

In sum, a defendant is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). To show prejudice, the petitioner must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

Furthermore, "[w]hen a [post-conviction] petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). If he fails to do so, he generally fails to establish ineffective assistance of counsel. *Id*. The post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Id*.; *see also Wade v. State*, 914 S.W.2d 97, 102 (Tenn. Crim. App. 1995).

First, the petitioner argues that lead counsel was ineffective for failing to challenge his warrantless arrest. As the post-conviction court found, probable cause existed for the arrest; thus, counsel's performance was within the range of competence demanded of attorneys in criminal cases, and we hold that counsel's performance was not deficient.

Second, the petitioner claims that counsel was ineffective for failing to challenge the admission of his statement. Lead counsel explained in detail his strategy for not doing so. Therefore, as lead counsel explained, the statement's admission evidenced the petitioner's version of events without the petitioner's testifying and without risking detrimental impeachment via his lengthy criminal history. We will not second-guess this informed tactical and strategic decision and hold that counsel was not ineffective regarding this issue.

Third, the petitioner argues that counsel was ineffective for failing to challenge the victim's identification. The victim had known the petitioner for years, and the petitioner's defense was that the shooting was accidental. The petitioner failed to show that lead counsel's refusal to challenge the identification prejudiced him. Thus, lead counsel was not ineffective.

Fourth, the petitioner claims that lead counsel was ineffective for failing to interview the victim and failing to subpoena Champion. The post-conviction court found that lead counsel attempted to interview the uncooperative victim. Moreover, the petitioner presented neither the victim nor Champion as witnesses at the post-conviction hearing. Because the petitioner did not present these witnesses at the hearing and because we may not speculate as to their testimony, he has failed to establish ineffective assistance of counsel.

Finally, the petitioner contends that lead counsel was ineffective for failing to object to the prosecution's leading questions. The post-conviction court found that the failure to object was a strategic decision based on lead counsel's explanation that the testimony either had already been elicited or was in line with the petitioner's theory. This court will not second-guess this informed strategic decision. Furthermore, the petitioner failed to show the failure prejudiced him. We hold that lead counsel was not ineffective for failing to object.

Having reviewed all of the petitioner's claims for post-conviction relief and finding that the record supports the post-conviction court's denial of his claims, we affirm the judgment of the post-conviction court.

_____

JAMES CURWOOD WITT, JR., JUDGE